OPINION
Defendant-appellant Raymond E. Staats appeals his sentence entered by the Stark County Court of Common Pleas on one count of breaking and entering and three counts of receiving stolen property, in violation of R.C. 2911.12 and R.C. 2913.51 (A), respectively. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF FACTS AND CASE
On July 18, 1997, appellant was arrested and charged with two counts of receiving stolen property. The indictment filed by the Stark County Grand Jury on July 25, 1997, charged appellant with one count of breaking and entering [R.C. 2911.12] and three counts of receiving stolen property [R.C. 2913.51(A)]. One of the receiving stolen property counts involved a uniloader valued between $5,000 and $100,000, a felony of the fourth degree. The three remaining charges were all fifth degree felonies. At his arraignment on August 1, 1997, appellant entered a plea of not guilty to all charges. Appellant's case proceeded to jury trial in the Stark County Court of Common Pleas on September 8, 1997. Ultimately, the jury found appellant guilty of all the offenses charged in the indictment. The trial court sentenced appellant to a fourteen-month term of incarceration on the fourth degree felony receiving stolen property count, and to ten-month terms of incarceration on each of the three remaining charges. The trial court ordered all the terms of incarceration be served consecutively for an aggregate sentence of forty-four months. Via Judgment Entry dated September 12, 1997, the trial court memorialized the jury verdict of guilty and its sentence. The following evidence was adduced at trial. Stark County Deputy Brian Purdue investigated the July 16, 1997 break-in at Waco Storage in Stark County, Ohio. At approximately 3:00 a.m., Deputy Purdue observed a van in the Waco Storage parking lot. When Deputy Purdue spotted a storage door left open approximately two feet, he turned his cruiser around in order to conduct a closer inspection and noticed a white male with light brown hair driving the van away from the recently closed storage door. As the deputy approached, he witnessed the suspect, who left the van with the keys in the ignition, running away. T. at 96-98. After checking the van and storage areas for additional suspects, Deputy Purdue secured the van. He then noted nine locks were cut from apparently entered storage units. The items loaded into the abandoned van included televisions, speakers, a shotgun and shells, and a bolt cutter. The van was registered to appellant. T. at 99-100. Detective Amendolar of the Stark County Sheriff's Office also investigated the Waco Storage break-in and contacted appellant later in the morning of July 16, 1997. Appellant, initially absent from his home, encountered Amendolar in the driveway as the detective was departing. Detective Amendolar noted appellant became extremely nervous when the detective informed appellant he was investigating the use of appellant's van in a burglary. Appellant's hands shook as he offered Detective Amendolar information on an entirely separate case. Appellant provided Detective Amendolar with photographs of a stolen uniloader, intimated he knew where the uniloader was currently stored, and claimed that someone named Eddie Smith intended to sell it for $4,000. T. at 109-110. Appellant indicated Dale Mayle had borrowed the van and had it during the time of the Waco Storage break-in. Appellant agreed to go to the Sheriff's office. After waiving his rights, appellant gave Detective Amendolar a taped statement reiterating Mayle's probable involvement in the Waco Storage burglary. T. at 103-106. Tim Wagner, an acquaintance of appellant for five to six years, stored an uniloader for appellant at his request in mid-April of 1997. Shortly thereafter, aided by an unidentified person, appellant stored the equipment in Wagner's shed in East Canton, Stark County, Ohio. T. at 61-66. A few weeks later, Wagner, who wanted access to his shed, helped appellant transport the uniloader to Wagner's vacant storage unit located at Liberty Storage. Although the unit was rented in Wagner's name, appellant alone locked and retained the key to the storage unit. T. at 66-70. Wagner later accompanied Detective Amendolar to Liberty Storage. Detective Amendolar cut off the lock and observed the stolen uniloader inside the storage unit after obtaining Wagner's consent to search the unit. T. at 69-71, 111-113. Jerry Brown, also known to appellant for five to six years, discussed car parts with appellant in July of 1997. Appellant informed Brown he had a motor, tires, and a fuel cell in his possession. With appellant's knowledge, Brown and appellant's brother, Gary Staats, delivered the auto parts to Loretta Cox's garage. Appellant informed Brown the auto parts were stolen after Brown helped retrieve and move them into Cox's garage. The two men then discussed finding a prospective buyer for the auto parts. T. at 80, 83-84. Appellant also brought an entertainment center to the home in which Brown and his girlfriend, Amy Garlando, resided on Scoville Avenue in Canton. T. at 85. Garlando had known appellant since the previous summer. T. at 91. Only Garlando was present when appellant, accompanied by an unidentified man, dropped off the entertainment center. T. at 88, 95. Ostensibly, the temporary storage at the Garlando/ Brown residence was to allow appellant to remodel his room. T. at 85. Detective Amendolar later recovered the unit from Garlando's house where it was being used in the living room. T. at 91. The parties stipulated at trial to the fact the merchandise in question had been stolen, as well as to the value of the items, as alleged in the indictment. T. at 60. In his original appeal to this Court, appellant raised two assignments of error, challenging the manifest weight of the evidence and the effectiveness of the trial counsel. This Court affirmed appellant's conviction. State v. Staats (June 1, 1998), Stark App. No. 1997-CA-00350, unreported. Appellant filed an appeal from the decision and judgment entry of this Court to the Ohio Supreme Court. During the pendency of the appeal to the Ohio Supreme Court, appellant's counsel filed an application for reopening pursuant to App. R. 26(B). The Ohio Supreme Court eventually declined to hear his case. This Court granted the application to reopen the appeal on August 14, 1998. It is from the September 12, 1997 judgment entry of sentence appellant appeals, raising the following assignments of error:
 I. THE JURY VERDICTS OF GUILTY ON THREE COUNTS OF RECEIVING STOLEN PROPERTY AND ONE COUNT OF BREAKING AND ENTERING ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 II. THE DEFENDANT/APPELLANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE ONE, SECTION 10 OF THE OHIO CONSTITUTION WHEN DEFENSE COUNSEL FAILED TO MOVE TO SEVER THE FOUR COUNTS OF THE INDICTMENT WHERE JOINDER WAS PREJUDICIAL AND FAILED TO REQUEST AN INSTRUCTION OF ACCOMPLICE TESTIMONY.
 I
The first assignment of error poses the question whether appellant's sentence, consisting of four consecutive terms of incarceration exceeding the maximum sentence for the most serious offense of which he was convicted, is contrary to the law. Appellant relies on R.C. 2953.08(C) to support his position. The version of the statute in effect at the time of appellant's sentencing provides: In addition to the right to appeal a sentence granted under division (A) or (B) of this section, a defendant who is convicted of or pleads guilty to a felony may seek leave to appeal a sentence imposed upon the defendant on the basis that the sentencing judge has imposed consecutive sentences under division (E)(3) of section 2929.14 of the Revised Code and that the consecutive sentences exceed the maximum prison term allowed by division (A) of that section for the most serious offense of which the defendant was convicted. Upon the filing of a motion under this division, the court of appeals may grant leave to appeal the sentence if the court determines that the allegation included as the basis of the motion is true.
R.C. 2929.14(E)(3) in effect at the time of the sentencing states:
 If the multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
 (a) The offender committed the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
 (b) The harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct.
 (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.
Appellant was convicted of one count of receiving stolen property, a fourth degree felony. The trial court sentenced appellant to fourteen months for this offense. The maximum prison term is eighteen months. Appellant was also convicted of three fifth degree felonies — two counts of receiving stolen property and one count of breaking and entering. The trial court sentenced appellant to three ten-month terms of incarceration for each of the fifth degree felonies. A conviction of a fifth degree felony carries a maximum penalty of twelve months in prison. The trial court ran the sentences consecutively to each other for an aggregate sentence of forty-four months. In State v. Albert (November 13, 1997), Cuyahoga App. No. 72677, unreported, the Eight District Court of Appeals found R.C. 2929.14 mandates the trial court make findings consecutive sentences are necessary to protect the public from future crime or to punish the offender, and the consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and no single person term adequately reflects the seriousness of the conduct evidenced in the multiple offenses. Concluding the trial court made no such findings in the case before it, the Albert Court remanded the matter to the trial court for re-sentencing of the appellant and the inclusion of such findings if the trial court, in its discretion, determined consecutive sentences were appropriate. We agree with our brethren in the Eighth District and hold R.C. 2929.19(B)(2)(c) requires the trial court to state its reasons for imposing consecutive sentences. A review of the record in the case sub judice reveals the trial court failed to make any findings in its sentencing entry, or, alternatively, on record at the time of sentencing, of the necessity of consecutive sentences to protect the public from future crime or that consecutive sentences were not disproportionate to the seriousness of the offender's conduct or the danger he poses to the public as required by R.C. 2929.14(E). Because the trial court failed to make the requisite findings, we find appellant's sentence does not comply with R.C. 2929.14, and, as a consequence, is contrary to law. Appellant's first assignment of error is sustained.
 II
The disposition of the first assignment of error renders moot any discussion of the second assignment of error. Appellant's conviction is affirmed but his sentence is vacated and the matter is remanded to the trial court to resentence the appellant in accordance with this opinion and the law.
By: Hoffman, P.J. Farmer, J. and Edwards, J. concur